IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: | ) |
| | ) |
| FREDERICK J. BILTER, JR. | ) Case No. 05-37702-DOT |
| | ) Chapter 7 |
| Debtor, | ) |
| _____ | ) |
| | ) |
| DELIA B. HALSTEAD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) A.P. No. 07-03118-DOT |
| | ) |
| FREDERICK J. BILTER, JR. | ) |
| | ) |
| and | ) |
| | ) |
| NANCY S. BILTER, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Debtor Fredrick J. Bilter Jr. filed an individual chapter 13 petition in this court on September 1, 2005, and voluntarily converted his case to chapter 7 on July 16, 2007. On September 10, 2007, Plaintiff Delia B. Halstead filed this multi-count adversary proceeding against debtor and his wife Nancy S. Bilter.

The complaint in this adversary proceeding alleges that 1) debtor Frederick Bilter breached a fiduciary duty, 2) Nancy S. Bilter aided and abetted debtor's breach of fiduciary duty, 3) debtor converted Delia Halstead's property, 4) Nancy S. Bilter aided and abetted the conversion, and 5) the Bilters engaged in a civil conspiracy. The complaint was subsequently amended to add allegations that Nancy Bilter converted Delia Halstead's property and that debtor aided and abetted that conversion. Halstead requests an award of $40,000.00 in actual damages, interest from May 6, 2001, and

$350,000.00 in punitive damages. Further, she asks that those awards be excepted from debtor's discharge pursuant to  § 523(a)(4) and (6) of the Bankruptcy Code.

Trial was held on May 29, 2008, at which time the court granted Nancy Bilter's motion for summary judgment, dismissing the claims against her for lack of subject matter jurisdiction. The court also denied debtor's motion for summary judgment because there still remained questions of material fact. Subsequently, plaintiff filed a motion to reconsider the order granting summary judgment as to defendant Nancy Bilter. That motion is considered in this opinion.

After further briefing by the parties, the court heard final argument on July 8, 2008. The court then ruled from the bench that plaintiff's request for punitive damages would be denied and that the § 523(a)(6) count of the complaint (willful and malicious injury) would be dismissed. The court took under advisement the § 523(a)(4) count (breach of fiduciary duty). Plaintiff's post-trial brief asks for judgment against defendants in the amount of $44,000.00 plus interest at the legal rate from November 14, 2000. The brief makes no request and presents no argument for punitive damages.

Subsequently, the court requested the parties to brief the issue raised by defendants' statute of limitations affirmative defense.

Jurisdiction of the court in this matter is based upon 28 U.S.C. § 1334 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

<u>FINDINGS OF FACT</u>

Debtor's parents, Frederick Bilter Sr. and his wife Anna A. Bilter, had three children, Frederick Jr., Delia Halstead and Alexander Bilter. In 1996 Anna became ill; she and Frederick Sr. moved in with plaintiff Delia Halstead. Based in part upon a

disagreement between plaintiff and Frederick Sr., in 1997 Anna and Frederick Sr. moved

out of plaintiff's residence and began residing with Frederick and Nancy Bilter.

On November 25, 1997, Frederick Sr. deposited funds with Signet Bank, N.A.

Upon receipt of the funds, Signet issued three $15,000.00 certificates of deposit. The

owners of the certificates were listed as follows:

    a.  CDA No. 070412054530022 – Frederick Bilter Sr., Anna Bilter, and

        Alexander Bilter

    b.   CDA No. 070412054530014 – Frederick Bilter Sr., Anna Bilter, and Delia

        Halstead

    c.  CDA No. 070412054530006 – Frederick Bilter Sr., Anna Bilter, and

        Frederick Bilter Jr.

In September 1998 the certificates of deposit listed above matured. The funds

from the certificates were augmented by additional funds derived from the sale of the

Bilter Sr. residence and then rolled over into three new certificates of deposit issued by

Wachovia Bank. The owners of those certificates were listed as follows:

    a.  CDA No. 070412060119103 – Frederick Bilter Jr. and Alexander Bilter

    b.   CDA No. 070412060119107 – Frederick Bilter Jr. and Delia Halstead

    c.  CDA No. 070412060119111 – Frederick Bilter Jr. and Nancy Bilter

The second series of certificates of deposit matured on September 8, 2000. At maturity,

each certificate had a value of $40,000.00.

Frederick Sr. died on August 8, 1999. Anna Bilter died on May 6, 2001. On

November 14, 2000, Frederick Jr. made a deposit to Wachovia in the amount of

$150,000.00. The deposit consisted of the funds from the three certificates of deposit plus

3

funds from Frederick Jr.'s savings account in the amount of approximately $18,000.00. Wachovia then issued a single certificate of deposit in the amount of $150,000.00 payable to Frederick Bilter Jr. and Nancy Bilter. Thus, $132,000.00 of the certificate represented funds from the Bilter Sr. estate that had been originally denoted for the three children of Frederick Sr. and Anna Bilter. The interest earned on the $150,000.00 certificate of deposit was automatically deposited to a separate Wachovia account in the name of Nancy Bilter. Over the course of the term of the $150,000.00 certificate, an aggregate amount of $33,024.56 in interest was deposited to the separate account.

At all times after the deaths of both Frederick Bilter Sr. and Anna Bilter, their three children were owners in equal shares of $132,000.00 included in the November 2000 $150,000.00 certificate of deposit. Each share was thus worth $44,000.00. Additionally, each child was entitled to a proportionate share of the interest earned on $132,000.00, which was approximately $29,040.00.[1] Upon termination of the certificate, one third share of principal and interest was thus worth $53,680.00 ($44,000.00 plus $9,680.00).

On or about March 2000, Frederick Jr. purchased one half of the stock in O.S.A., Inc. John Andruzzi ("Andruzzi") was the president of O.S.A. and owned the other fifty percent of the stock. The primary business of O.S.A. was to operate a gas/service station. On May 29, 2003, Fredrick and Andruzzi borrowed $100,000.00 from Wachovia on behalf of O.S.A. Fredrick pledged the $150,000.00 certificate as collateral for the loan. On March 22, 2004, Wachovia foreclosed upon the entire value of the $150,000.00 certificate.

---

[1]This calculation is based upon the ratio of $132,000.00 to $150,000.00 or 88% of $33,000.00.

Prior to Frederick Jr.'s bankruptcy filing on September 1, 2005, plaintiff was not aware of the foregoing history of the deposit certificates of cash from her parents' estates or that her father had entrusted the sums described to Frederick Jr. In his bankruptcy schedules, Frederick Jr. acknowledged his debt to plaintiff and to his brother Alexander in the amount of $50,000.00 each by listing them as unsecured creditors. Plaintiff was not aware of the full circumstances, including the nature of Frederick Jr.'s use and disposition of the cash, before Frederick, Jr. testified at his § 341 meeting of creditors on October 20, 2005. Plaintiff's failure to learn of these circumstances previously was not attributable to her failure to exercise due diligence.

These findings of fact are supplemented by additional findings of fact set forth below.

<u>DISCUSSION AND CONCLUSIONS OF LAW.</u>

**Statute of Limitations Affirmative Defense.**

Defendants pled the statute of limitations as defenses in their answers, an issue neither party addressed in their initial briefs. After inquiry by the court, the parties filed supplemental written argument covering this affirmative defense. After considering the parties' submissions, the court concludes that the Virginia statutes of limitations are not a bar to plaintiff's claims.

The Virginia statutory scheme presents several possibilities under the facts of the present case.

1) Va. Code § 8.01-248 provides a two year statute of limitations for personal actions for which no other limitation is provided. Va. Code § 8.01-230 provides that a cause of action accrues and the limitation period begins to run from the date the injury is

sustained. Virginia case law recognizes that the limitations period may be tolled if the defendant intentionally misleads the plaintiff who is unaware of the wrongful act; however, the limitations period is tolled only until the plaintiff could reasonable have discovered the injury and will not be tolled where the plaintiff failed to make reasonable inquiry. *Resolution Trust Corp. v. Walde*, 856 F. Supp. 281, 286, 289 (E.D. Va. 1994).

2) Va. Code § 8.01-243(A) requires that actions for damages from fraud shall be brought within two years after accrual of the cause. Va. Code § 8.01-249(1) provides that a cause of action for fraud does not begin to accrue until the fraud is "discovered or by the exercise of due diligence reasonably should have been discovered." *See STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990) (exercise of due diligence means "such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances . . . depending on the relative facts of the special case") (quoting Black's Law Dictionary 411 (rev. 5th ed. 1979)).

3) Va. Code § 8.01-243(B) provides that actions for "injury to property . . . shall be brought within five years after the cause of action accrues."

4) Virginia's Uniform Trust Code  § 55-550.05(C) provides a five year limitations period for a trust beneficiary to bring a judicial proceeding against a trustee for breach of trust. The time period runs from the "first to occur of : 1. The removal, resignation, or death of the trustee; 2. The termination of the beneficiary's interest in the trust; or 3. The termination of the trust." Paragraph D of the statute further requires that a proceeding "be commenced within two years after the fraud is discovered . . . ." Va. Code § 55-550.05.

Defendant Frederick Jr. filed this bankruptcy case on September 1, 2005. Plaintiff filed this adversary proceeding on September 10, 2007. Under Bankruptcy Code §108(c)(1) the statute of limitations for the commencement of plaintiff's adversary proceeding is governed by Virginia law. The issue is thus whether the Virginia statute of limitations was still open on September 10, 2007.

Defendants assert that the general two year limitations period of Va. Code § 8.01-248 applies to the present case and that the two year period expired either two years after November 2000 when Frederick Jr. rolled the three certificates of deposit into his sole name or two years after Anna Bilter's death on May 6, 2001. Defendants further argue that the limitations period was not tolled because there was no fraud on Frederick Jr.'s part and because plaintiff failed to make reasonable inquiry that would have disclosed her interest in her parents' assets. *See Hawks v. DeHart*, 206 Va. 810, 146 S.E. 2d 187 (1966).

Plaintiff's position is that on September 10, 2007, the limitations period on her claims was open under either Va. Code §§ 8.01-243(A) (fraud), 8.01-243(B) (injury to property), or 55-550.05 (breach of trust). She relies in part on the fact, clearly established in the trial record, that she had no knowledge of the debt owed her by Frederick Jr. until after debtor's bankruptcy case was filed on September 1, 2005, and did not know the circumstances of the money entrusted to Frederick, Jr. by his father until the § 341 meeting of creditors on October 20, 2005.

In resolving the issue, consideration must first be given as to when Frederick Jr. committed a "wrongdoing" or an injury to plaintiff's interest. The court disagrees with defendants' argument that the injury happened either in November 2000 or on May 6,

2001. As will be discussed later in this opinion, the court concludes that Frederick Sr. created an express trust in the funds at issue with Frederick Jr. as trustee. Based on that conclusion, at a point in time no later than the date of Anna Bilter's death Frederick Jr. held $132,000.00 of the $150,000.00 certificate as trustee for himself and his siblings. Aside from diverting the interest from the certificate to his wife, Frederick Jr.'s earliest conduct that might be considered a breach of trust occurred on May 29, 2003, when he pledged the $150,000.00 note for a bank loan. Alternatively, there was a clear breach of trust when the note was irretrievably lost by foreclosure on March 22, 2004. The injury thus occurred on either May 29, 2003, or March 22, 2004. As set forth below, the court finds that as to either date, the limitations period was open when the adversary proceeding was filed on September 10, 2007.

A persuasive argument can be made the two year limitations period of Code § 8.01-248, was tolled under § 8.01-230 until after the 341 meeting on October 20, 2005; plaintiff could not have reasonably been expected to learn of any injury before then, particularly in light of the fact that Frederick Jr. had placed the money in a certificate that excluded plaintiff. However, the court need not rely on this code section.

If Frederick Jr.'s actions are considered to be fraud, then the two year statute of limitations under Va. Code § 8.01-243(A) was tolled by § 8.01-249(1), because the fraud was not discovered by plaintiff until October 20, 2005. The court has previously found that plaintiff did not fail to exercise due diligence with regard to any interest she might have had in the funds at issue. However, the court need not decide whether Frederick Jr. committed fraud.

Va. Code § 8.01-243(B), a five-year statute of limitations for injuries to property,

is plainly applicable in this case. Virginia Supreme Court decisions support this

conclusion as Frederick Jr.'s conduct was directed at plaintiff's property and not her

personally. *See Bader v. Cent. Fid. Bank*, 245 VA. 286, 427 S.E.2d 184, 187 (1993);

*Vines v. Branch*, 244 Va. 185, 418 S.E. 2d 890, 894 (1992).

Additionally, Va. Code § 55-550.05(C) applies a five year limitation period for a

trust beneficiary to bring a proceeding against the trustee for breach of trust. The statute

runs from the earliest to occur of 1) the removal, resignation, or death of the trustee, 2)

the termination of the beneficiary's interest, or 3) the termination of the trust. All three of

these events here took place either on May 29, 2003, or March 22, 2004, so they are not

barred by § 550.05(C).

Thus under either Va. Code §§ 8.01-243(B) or 55-550.05(C), plaintiff's filing this

adversary proceeding on September 10, 2007, was not barred by the Virginia statutes of

limitation.

**Motion for reconsideration.**

Plaintiff moves the court to reconsider the granting of Nancy Bilter's motion for

summary judgment, dismissing the claim against her for lack of jurisdiction. Plaintiff

argues that the outcome of the claims against Nancy Bilter is related to the bankruptcy

case because the claims could conceivably affect on the bankruptcy estate of debtor

Frederick Jr. In support, plaintiff asserts that debtor's largest asset is his home, valued at

$320,000.00 and encumbered by only $50,000.00 in debt. Because the home is held as

tenants by the entirety by debtor and his defendant spouse, it is not available to satisfy

claims of creditors who do not hold joint claims against debtor and his spouse.  Plaintiff

therefore points out that a joint judgment against the Bilters would enable the chapter 7 trustee to administer the property and allow plaintiff to recover against debtor and his spouse. Debtor's schedules filed in his bankruptcy case support the factual basis of this argument.

The Fourth Circuit as recently as 2007 has addressed the issue of bankruptcy court jurisdiction over claims. In *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007), the court outlined sources of the bankruptcy court's jurisdiction. "The bankruptcy court derives its jurisdiction from the district court. *See* 28 U.S.C. § 157(a), (b)(1). District courts have 'original and exclusive jurisdiction of all cases under title 11,' and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or *arising in* or *related to* cases under title 11.' 28 U.S.C. § 1334(a), (b)." (486 F.3d at 835) (emphasis added). The Fourth Circuit also noted the bankruptcy court's "jurisdiction to adjudicate" claims provided by 28 U.S.C. § 1334(e), which gives the district court in a case under Title 11 exclusive jurisdiction of property of the estate as well as property of the debtor. 486 F.3d at 835.

With respect to a bankruptcy court's § 1334 "arising in" jurisdiction, the Fourth Circuit found that

> [a] proceeding or claim 'arising in' Title 11 is one that is 'not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.' *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (quoting *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.),* 86 F.3d 364, 372 (4th Cir. 1996)). Therefore, a 'controversy arises in Title 11' when 'it would have no practical existence *but for* the bankruptcy.' Id. (quoting *Bergstrom*, 86 F.3d at 372).

*Valley Historic Ltd. P'ship v. Bank of N. Y.*, 486 F.3d at 835.

10

With respect to a bankruptcy court's § 1334 "related to" jurisdiction, the Fourth

Circuit noted that

> like the majority of the other circuits, [the Fourth Circuit] has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), for determining 'related to' jurisdiction. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986). In short, 'the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.' *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor*, 743 F.2d at 994). Therefore, '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate.' *Id*. at 625-26; *see also Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997).

*Valley Historic Ltd. P'ship v. Bank of N. Y.*, 486 F.3d at 836 (footnote omitted).

The facts in this case do not support a finding that the claim against Nancy Bilter

"arises in" debtor's bankruptcy or that the claim would have no existence outside of the

bankruptcy. The issue then is whether the claim against Nancy Bilter falls under "related

to" jurisdiction. Plaintiff has pointed out that the outcome of this adversary proceeding

could have a substantial impact on the administration of the bankruptcy estate because it

might make debtor's otherwise exempt home subject to the claims of plaintiff. The court

agrees with this argument. Certainly the bankruptcy estate is affected when claims might

arise that will cause a previously exempt asset to become available for distribution to a

creditor. Therefore, the court will grant the motion for reconsideration filed by plaintiff,

vacate its order granting summary judgment as to defendant Nancy S. Bilter, and deny

the motion for summary judgment as to defendant Nancy S. Bilter on the basis of

jurisdiction.

**Amended complaint.**

Plaintiff essentially asserts two theories of recovery. First, under Code § 523(a)(4) she alleges that defendant Frederick Jr. breached a fiduciary duty to her, in which his wife Nancy Bilter aided and abetted. Second, under § 523(a)(6) she alleges that debtor willfully and maliciously converted funds due to her, in which Nancy Bilter aided and abetted. In either case, she argues that she has a nondischargeable claim against defendants Frederick Jr. and Nancy Bilter.

Plaintiff's Claim to Funds.

It must first be determined whether plaintiff and her brother Alexander Bilter in fact had rights in the $150,000.00 that debtor deposited in Wachovia Bank on November 14, 2000. The evidence, as outlined above, shows that Frederick Bilter Sr. planned to ensure that Frederick Jr. would have funds to care for Frederick Sr. throughout his lifetime.  The father contemplated that upon his death his remaining estate would be shared three ways among his children, as evidenced by the existence of three separate certificates of deposit, one for each child. Debtor Frederick Jr., however, was a joint holder of each certificate, thus ensuring that he would be able to access those funds should they be needed for the father's care.

Conversion Counts.

a. *Frederick Bilter, Jr.* The evidence convincingly establishes that Frederick Sr. intended that Frederick, Jr. would share any funds remaining in the estate equally with plaintiff and Alexander Bilter and that Frederick Jr. understood that intent. The court therefore finds that upon Frederick Sr.'s death, his son Frederick owed one-third of $132,000.00 of the $150,000.000 certificate to each of his siblings.

The failure of Frederick Jr. to turn over one-third of the rights in $132,000.00 to plaintiff constituted conversion. Under Virginia law, a conversion occurs when a person wrongfully exercises or assumes "authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001) (citing *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 300, 505 S.E.2d 196, 201 (1998);  *Bader v. Cent. Fid. Bank*, 245 Va. 286, 289, 427 S.E.2d 184, 186 (1993)). The evidence establishes that Frederick Bilter converted the funds payable to his siblings. By pledging the $150,000.00 certificate, Frederick Jr.acted inconsistently with the rights of plaintiff and her brother Alexander Bilter. In addition, total interest received during the term of the certificate was $33,024.56, of which $9,680.00 has been attributed to interest on plaintiff's beneficial interest in the certificate. Frederick Jr. is liable to plaintiff for this sum as well.

b. *Nancy Bilter*  Plaintiff's amended complaint seeks judgment against Nancy Bilter for aiding and abetting her husband Frederick in his breach of fiduciary duty and conversion of plaintiff's interest in the trust funds. Nancy Bilter did not roll over the funds to the single $150,000.00 certificate. There is insufficient evidence to establish that she acted in a manner inconsistent with the rights of plaintiff or Alexander Bilter in the $150,000.00 certificate. The actions of Nancy Bilter did not rise to the level of conversion with respect to the certificate. It is true that the interest flowed to her, but the existence of the interest account set up by her husband does not by itself show that she was attempting to deprive plaintiff of her rights to the funds deposited in the certificate. The record does not reveal that Nancy Bilter participated in her husband's dealings with

13

his father and the certificates; thus there is no basis for a finding that she acted to deprive

plaintiff of her rights. In fact, the evidence does not establish that Nancy Bilter knew

what rights her husband or plaintiff had in the $150,000.00 certificate.

As to the interest earned on the certificate, the trial record reveals virtually no

circumstances surrounding the opening of the interest bank account, although it may be

presumed it was opened at the same time Frederick Jr. rolled the $150,000.00 cash over

to the certificate of deposit on November 14, 2000. At trial Nancy denied all knowledge

of Frederick Jr.'s actions regarding the certificate of deposit, including the interest

account. While the broadness of her testimony was somewhat implausible, plaintiff was

unable to produce evidence to the contrary with respect to the principal of the certificate.

The court has considered whether Nancy Bilter might be indebted to plaintiff for the

$9,680.00 interest amount. Undoubtedly, Nancy allowed the account to be opened in her

name, and the interest has accrued to her benefit. While it is true that the court has

already found that Nancy Bilter was unaware of the salient facts surrounding her

husband's dealings with his father and the certificates, she nonetheless did receive the

interest earned on those certificates. This alone is sufficient to establish conversion, since

conversion does not require intent but merely "the wrongful exercise or assumption of

authority over another's goods." *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344, 576

S.E.2d 438, 443 (2003).[2] Thus, Nancy Bilter is indebted to plaintiff in the sum of

---

[2]The Supreme Court has held that "a willful and malicious injury does not follow as of
course from every act of conversion, without reference to the circumstances. There may
be a conversion which is innocent or technical, an unauthorized assumption of dominion
without willfulness or malice. There may be an honest but mistaken belief, engendered
by a course of dealing, that powers have been enlarged or incapacities removed. In these
and like cases, what is done is a tort, but not a willful and malicious one."
*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934)
(citations omitted). This language has been cited approvingly by Judge Mitchell of this
district in *Kim v. Kim (In re Kim),* Adv. Pro. No. 08-1126, 2008 WL 2705082 at *4 (July

$9,680.00, and judgment will be entered against her in this amount. That judgment will be entered against her jointly with Frederick, Jr., defendant being entitled to only one recovery of the interest amount.[3]

<u>Dischargeability.</u>

The existence of a debt to plaintiff from defendants Frederick Bilter and Nancy Bilter having been established, the focus now turns to whether that debt is to be excepted from debtor's chapter 7 discharge. Plaintiff alleges two grounds of nondischargeability:1) Bankruptcy Code § 523(a)(4), which excepts a debt incurred for "fraud or defalcation while [debtor is] acting in a fiduciary capacity, embezzlement, or larceny;" and 2) § 523(a)(6), which excepts from discharge debts for willful and malicious injury. The burden of proof is on plaintiff to prove the exceptions to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991).

WILLFUL AND MALICIOUS INJURY, § 523(A)(6).

The court ruled from the bench following argument on July 9, 2008, that plaintiff failed to prove debtor willfully and maliciously intended to harm plaintiff. Rather, the court viewed the series of events ending in Wachovia's foreclosure of the $150,000.00 certificate as an unfortunate result of debtor Frederick Bilter Jr.'s unwise investment in the service station business through his partnership with Mr. Andruzzi in O.S.A. The testimony did not reveal malice or ill will as a motivation for the loss of the money. Debtor did not anticipate that the business would fail and the money would be lost.

---

9, 2008).

[3]The above findings with regard to the conduct of Nancy Bilter establish conclusively that plaintiff did not establish that defendants conspired to deprive her of her interest in the funds at issue.

Debtor testified that he had intended to share the funds with his siblings. The circumstances do not indicate malice but instead a series of unwise and perhaps even thoughtless decisions. In addition, the evidence is wholly devoid of evidence of malice or willful behavior on the part of defendant Nancy Bilter.

Judge St. John of this court has recently issued a scholarly and comprehensive opinion summarizing the status of the law under § 523(a)(6). In *Dominion Virginia Power v. Robinson (In re Robinson),* 340 B.R. 316 (Bankr. E.D. Va. 2006), the court was forced to decide whether a debtor's receipt of electric power for significantly less than he should have paid (as a result of meter tampering by parties unknown) constituted a debt nondischargeable because of willful and malicious injury. The court provided a lengthy summary of case law surrounding this exception, using the decision of the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), as the starting point of its analysis. In *Geiger*, the Supreme Court concluded that an exception to discharge under § 523(a)(6) required an act done with an actual intent to cause injury; however, the court's ruling to some extent left open the result where an intentional act incidentally causes injury:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend " the consequences of an act," not simply "the act itself."

*Id.* at 61-62, 118 S.Ct. 974 (citation omitted).

16

Subsequent to the Supreme Court's issuance of *Geiger*, this court has had further opportunity to comment upon the requirements of § 523(a)(6). In *Johnson v. Davis (In re Davis)*, the court stated that:

> Malice does not mean the same thing for nondischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy. In bankruptcy, debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same. *See In re Stanley*, 66 F.3d at 667 (citing *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008-09 (4th Cir. 1985)). The Fourth Circuit defines malice as an act causing injury without just cause or excuse. See *In re Powers*, 227 B.R. at 73.[4]
>
> Debtor's subjective mind set is central to the inquiry as to whether debtor acted deliberately in knowing disregard of a creditor's rights in property. In fact, a plaintiff creditor can even establish malice on an implied basis from a showing of debtor's behavior, as well as a presentation of the surrounding circumstances. *See St. Paul Fire & Marine Ins. Co.,* 779 F.2d at 1010 ("[i]mplied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under ... § 523(a)(6)."); *Hagan v. McNallen ( In re McNallen)*, 62 F.3d 619, 625 (4th Cir. 1995). What is required is that plaintiff prove that debtor's injurious act was done deliberately, intentionally and with knowing disregard for plaintiff's rights. *See In re Stanley,* 66 F.3d at 667.

262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001).

As this court ruled from the bench, the facts here do not rise to the level required by *Geiger* for excepting a debt from discharge under § 523(a)(6). Plaintiff has not proven that Frederick Jr. pledged the money to Wachovia Bank with the subjective intent to injure his siblings. Rather, he pledged it to further his business interests, not contemplating that he would lose the entire amount. This, coupled with the facts and circumstances surrounding the establishment of the certificates, does not suffice to bring debtor's conduct to the level of willful and malicious required by § 523(a)(6). In fact, the

---

[4]Branch Banking and Trust Co. v. Powers (In re Powers), 227 B.R. 73 (Bankr. E.D. Va. 1998).

language of *Davis v. Aetna Acceptance Co.*, referred to approvingly by the Supreme

Court in *Geiger*, is especially applicable to this case:

> There is no doubt that an act of conversion, if willful and malicious, is an injury ... within the scope of this exception .... But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393

(1934) (citations omitted).

Because plaintiff has failed to carry her burden of proof under § 523(a)(6), the

debt owed to her by Frederick, Jr. and Nancy Bilter is not excepted from his discharge

under this count.

FRAUD OR DEFALCATION OF A FIDUCIARY, § 523(A)(4).

Bankruptcy Code § 523(a)(4) excepts from discharge any debt "for fraud or

defalcation while [the debtor] is acting in a fiduciary capacity, embezzlement, or

larceny." 11 U.S.C. § 524(a)(4). Plaintiff alleges that Frederick Jr. was a fiduciary as to

her share of the sums received by him from their parents. There is no dispute that he

controlled the funds in issue and lost the principal of $132,000.00 through a failed

business venture. The court has found plaintiff's one third share of the principal plus

interest to be $53,680, an amount not in great controversy among the parties. The

controversy is whether Frederick Jr. was a fiduciary. In other words, was defendant the

fiduciary of a trust of which plaintiff was beneficiary or does plaintiff simply have a

claim for an unsecured debt that may be discharged in Frederick Jr.'s chapter 7

bankruptcy?

In the recent case of *Kubota Tractor Corp. v. Strack* (In re Strack), the Fourth Circuit addressed the § 523(a)(4) exception to discharge for debts arising from fraud or defalcation in a fiduciary capacity. The court stated that "[t]o prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation. *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997)." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 498 (4th Cir. 2008).

The court must first determine whether Frederick Jr. owed a fiduciary duty to plaintiff. While federal law determines whether a fiduciary duty exists under § 523(a)(4), in making that determination, the bankruptcy court may refer to state law. *In re Strack*, 524 F.3d 493, 498 (4th Cir. 2008) ("the creation of an express trust can give rise to the requisite fiduciary duty under § 523(a)(4). See *Davis*, 293 U.S. at 334.[5] [And] . . . in determining whether such a trust was established, we look to the law of the Commonwealth of Virginia, where the trust was allegedly created, for guidance. *See Am. Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir. 1996)"). In *Strack*, the Fourth Circuit  outlined Virginia law with respect to express trusts:

> Under Virginia law, "[a]n express trust is based on the declared intention of the trustor," manifested either in writing or through the parties' actions. *Leonard v. Counts*, 221 Va. 582, 272 S.E.2d 190, 194 (1980); see also *Woods v. Stull*, 182 Va. 888, 30 S.E.2d 675, 682 (1944) ("In order to constitute an express trust there must be either explicit language to that effect or circumstances which show with reasonable certainty that a trust was intended to be created."). Although the parties' use of the word "trust" is to be given great weight, it is not determinative. See *Exec. Comm. v. Shaver*, 146 Va. 73, 135 S.E. 714, 716 (1926); see also *Broaddus* [*v. Gresham*, 181 Va. 35], 26 S.E.2d at 36 (Va.1943) (recognizing that an express trust can be established without use of any

---

[5] 55 S.Ct. 151.

"technical words"). All that is necessary is the "unequivocal" intent "'that the legal estate [be] vested in one person, to be held in some manner or for some purpose on behalf of another.'" *Old Republic Nat'l Title Ins. Co. (In re Dameron)*, 155 F.3d 718, 722 (4th Cir. 1998) (quoting *Broaddus*, 26 S.E.2d at 35). At bottom, "[i]f the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If [however,] the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created." *Broaddus*, 26 S.E.2d at 37.

In sum, whether an express trust was created between Kubota and Enterprise depends on the intent of the parties . . . .

*In re Strack*, 524 F.3d at 498-99.

The above quotation from the Fourth Circuit's opinion in *Strack* effectively summarizes the Virginia law applicable to a determination of whether Frederick Jr. was a fiduciary under an express trust. *See also Bare's Ex'rs v. Montgomery*, 143 Va. 303, 307-308, 130 S.E. 230 (1925); *Hammond v. Ridley's Ex'rs*, 116 Va. 393, 398, 82 S.E. 102 (1914); *Kelley v. Lamont (In re Lamont)*, Adv. Pro. No. 97-01328, 1997 Bankr. LEXIS 2424 (Bank. E.D. Va., Dec. 1, 1997). In addition, Judge St. John of this district has recently summarized Virginia law with respect to the creation of a trust:

In Virginia, while it is essential to the creation of a trust that there be an explicit declaration of trust, or circumstance which show beyond a reasonable doubt that a trust was intended to be created, no formal, technical, or particular words are necessary. *Executive Comm. v. Shaver*, 146 Va. 73, 79, 135 S.E. 714, 715 (1926) Rather, it is sufficient if an intention to create a trust and the subject matter, purposes, and beneficiary are stated with reasonable certainty. *Id. See also Broaddus v. Gresham,* 181 Va. 725, 731, 26 S.E.2d 33, 35 (1943), (quoting *Hammond v. Ridley's Ex'r.,* 116 Va. 393, 398, 82 S.E. 102, 103 (1914)) (a trust may only be created by words or circumstances "which unequivocally show an intention that the legal estate was vested in one person, to be held in some manner or for some purpose on behalf of another"), and *Schloss v. Powell,* 93 F.2d 518, 519 (4th Cir. 1938). ("There is no doubt that money can be placed in the hands of one person for payment to another under such circumstances that a trust arises in favor of the latter which he may enforce; and this end may be accomplished by an express declaration of trust or by circumstances indicating an intention of the depositor to place the fund irrevocably beyond his control and devote it to the indicated purpose.")

*Holmes Envtl. Inc. v. Suntrust Banks, Inc. (In re Holmes Envtl., Inc.)*, 287 B.R. 363, 376-77 ( Bankr. E.D. Va. 2002).

If an express trust was created for the benefit of plaintiff by her father, it would impose a fiduciary duty upon Frederick Jr. Because there is no written document setting forth the intent of either Frederick Sr. or Frederick Jr., with respect to the funds at issue, whether there was an express trust must be determined from the surrounding circumstances. A brief review of the facts is necessary.

In 1997 Frederick Sr. deposited funds in three certificates of deposit in the joint names of Frederick Sr. and Anna Bilter; additionally, so that his children might ultimately receive the benefit of the cash deposits, each certificate of deposit carried the name of one of the Bilter children, respectively Frederick Jr., Alexander Bilter, and Delia Halstead. The certificates of deposit matured in September 1998. The funds received upon maturity were augmented by additional funds from the sale of the Bilter Sr. residence. Three new certificates were purchased in the respective names of Frederick Jr. and Alexander, Frederick Jr. and Delia Halstead, and Frederick Jr. and Nancy Bilter. Again, it was Frederick Sr.'s intent that his children share in these funds.

Frederick Sr. died on August 8, 1999. Anna Bilter died on May 6, 2001. The three certificates of September 1998 matured in September 2000, at which time each certificate had a value of $40,000.00. In November 2000 Frederick Jr. rolled the certificates over into a new $150,000.00 certificate of deposit in the name of Frederick Jr. and his wife Nancy. These funds  were derived from the three certificates plus approximately $18,000.00 of Frederick Jr.'s savings. To the extent of $132,000.00, the new certificate of deposit remained impressed with Frederick Sr.'s desire that this money was to be shared by his children, a fact which defendant Frederick Jr. has acknowledged. Interest from the

$150,000.00 certificate was deposited in a bank account in the name of Nancy Bilter. Subsequently, Frederick Jr. pledged the certificate to secure a business loan taken by him. The entire sum was lost through foreclosure by the secured lender. During the term of the certificate, interest in the aggregate amount of $33,024.56 was deposited in Nancy Bilter's bank account.

At his § 341 meeting, Frederick Jr. testified that he had been entrusted with his parents' inheritance for the benefit of his siblings, that  his parents had given him the money so that each sibling would get $50,000.00, and that the verbal instructions given to him by his parents with respect to the certificates of deposit was that he was to take care of his parents and share the money with his brother and plaintiff "when the time came." (§ 341 meeting Tr. 5-7.) In other words, when both parents had passed away, defendant was to share the inherited money with Alexander and plaintiff. Frederick Jr. further testified in his Rule 2004 examination on May 12, 2006, that the reason he scheduled plaintiff and his brother as creditors on his bankruptcy schedules was that he was paying them back for losing their money and that he told each to file a $50,000 proof of claim in his bankruptcy case. (Tr. 8, 17.) Additionally, 1) in his bankruptcy schedules, Frederick Jr. listed both Alexander and plaintiff as unsecured creditors with claims of $50,000.00, 2) after filing bankruptcy Frederick Jr. telephoned them to apologize and acknowledge he owed them the money, and 3) Frederick Jr. acknowledged at trial that only after speaking to his new attorney did he come to believe he had no debt to his siblings.[6]

---

[6]The combination of all this evidence is much more persuasive of Frederick Sr.'s and Jr.'s intent than Frederick Jr.'s subsequent denials at trial or the testimony of his witnesses. With respect to the trial testimony, the court accepts plaintiff's version of events over Frederick Jr.'s.

At a point in time no later than the death of Anna Bilter, her three children were owners in equal shares of $132,000.00 of the funds included in the November 2000 certificate of deposit. In addition, the children were entitled to the interest from the certificate, which was approximately $33,000.00. The evidence, including Frederick Jr.'s testimony cited above and his other actions in connection with his bankruptcy case, show clearly and unequivocally that no later than the death of both parents he held the funds from their estates as a fiduciary of an express trust for the benefit of himself and his two siblings. The finding that Frederick Sr. created a trust also finds strong support in the fact that during his lifetime, the funds remained in separate certificates for each of his children. *See Broaddus v. Gresham*, 181 Va. 725, 26 S.E.2d 33 at 37 (1943).

The second element of § 523(a)(4) is that the debtor-fiduciary must have committed a defalcation. Defalcation is defined as "the slightest misconduct, and it need not be intentional conduct; negligence or ignorance may be defalcation." *Bailey v. Sonnier (In re Sonnier)*, 157 B.R. 976, 984 (E.D. La. 1993), (quoting *Morales v. Codias (In re Codias)*, 78 B.R. 344, 346 (Bankr. S.D. Fla. 1987) (citation omitted)); *see also Caldwell v. Hanes (In re Hanes)*, 214 B.R. 786 at 813 (Bankr. E.D. Va. 1997) (citing *Old Republic Surety Co. v. Richardson (In re Richardson)*, 178 B.R. 19, 27-30 (Bankr. D.D.C. 1995), *aff'd*, 107 F.3d 923 (D.C. Cir. 1997)).  Further, "[a] defalcation under § 523(a)(4) is the 'misappropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds.'" *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997) 9quoting *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1460 (9th Cir. 1997)).  However, "[a] 'defalcation' ... does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" *Pahlavi*, 113 F.3d at 20 (citations omitted).

The court finds that defendant, as a fiduciary of the trust created by his father, committed a defalcation of plaintiff's trust funds by his loss of the funds either when he pledged the certificate of deposit to secure a loan or when the certificate was lost by foreclosure. As stated above, defalcation under Virginia law does not require fraudulent conduct, and the court makes no decision on whether Frederick Jr. committed fraud.

Accordingly, an order will be entered granting plaintiff judgment against Frederick Bilter Jr. for the principal sum of $44,000.00 plus $9,680.00 as her proportionate share of the interest earned on the certificate up to March 22, 2004, the date it was lost through foreclosure. The interest is awarded as pre-judgment interest, which was requested in plaintiff's complaint, and which the court finds appropriate. The court will also award plaintiff pre-judgment  interest on the principal sum of $44,000.00 from March 22, 2004, to the date of entry of judgment in this adversary proceeding. The pre-judgment interest rate will be that provided by Va. Code. §§ 8.01–382 (2008 Supp.) and 6.1-330.54 (2008 Supp.). *See Arwood v. Dunn (In re Caribbean K Line, Ltd.)*, 288 B.R. 908, 920 (S.D. Fla. 2002); *Citizens Fed. Bank v. Cardian Mortgage Corp. (In re Cardian Mortgage Corp.)* 122 B.R. 255, 264 (Bankr. E.D. Va. 1990). Following entry of judgment in this adversary proceeding, the judgment rate provided by 28 U.S.C. § 1961 will apply.

The judgment award against Frederick Jr. will be excepted from discharge pursuant to Bankruptcy Code § 523(a)(4).[7]

The court previously ruled that no punitive damages would be awarded, and plaintiff has not argued for punitive damages in her post-trial brief.

---

[7]The record is devoid of evidence that Nancy Bilter had a fiduciary duty to plaintiff; thus, the $9,680.00 debt of Nancy Bilter to plaintiff is not nondischargeable.

24

SIGNED: <u>March 30, 2009</u>

    <u>/s/ Douglas O. Tice Jr.</u>

DOUGLAS O. TICE JR.

CHIEF JUDGE

UNITED STATES BANKRUPTCY COURT

Copies to:

James E. Kane, Esquire

Gregory Kaplan, PLC

7 East Second Street

Richmond, Virginia 23224-4253

*Counsel for Plaintiff*

Teddy J. Midkiff, Esquire

Goff & Midkiff, PLLC

P.O. Box 313

Chesterfield, Virginia 23832

*Counsel for Frederick J. Bilter, Jr.*

*Counsel for Nancy Bilter*